AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One black Apple iPhone found during the search of APD<br>Police Vehicle, Unit #C91 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.    24-MR-160

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1951; 1952; 371;<br>666; 1343; 1346; 2 | Hobbs Act extortion under color of official right; Travel Act interstate travel or<br>transportation in aid of racketeering enterprises; conspiracy; bribery; wire fraud;<br>honest services wire fraud; and aiding and abetting |

The application is based on these facts:

The affidavit of Special Agent Zackari S. Mercado is incorporated herein by reference.
**The Court notes that paragraph 7 explicitly incorporates the facts set forth in the earlier Global Affidavit.**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

ZACKARI MERCADO, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

Electronically submitted and telephonically sworn before me. *reliable electronic means)*.

Date:    January 25, 2024

_____
*Judge's signature*

City and state:  Albuquerque, New Mexico

Karen B. Molzen, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**AFFIDAVIT IN SUPPORT OF APPLICATION**

I, Zackari S. Mercado, Special Agent of the Federal Bureau of Investigation ("FBI"), being duly sworn, depose and state that:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following black Apple iPhone (the SUBJECT DEVICE 1), Apple iPhone, IMEI: 356240877129819 (the SUBJECT DEVICE 2),[1] black Apple iPhone (the SUBJECT DEVICE 3), blue and silver thumb drive (SUBJECT DEVICE 4), and black cellular telephone, (SUBJECT DEVICE 5) further described in Attachment A, for the purpose of identifying electronically stored data and for the items described in Attachment B:

a.  The property to be searched is an Apple iPhone, Evidence Item #1 as noted in FD-886 Evidence Collected Log dated January 18, 2024, that recorded the evidence found during the search of Nelson ORTIZ's assigned APD Police Vehicle, Unit #A52, hereinafter "SUBJECT DEVICE 1." The SUBJECT DEVICE 1 is currently located in the Evidence Control Room at FBI Albuquerque, 4200 Luecking Park Avenue NE, Albuquerque, New Mexico, 87107.

---

[1] Affiant is seeking an search warrant for SUBJECT DEVICE 2 out of an abundance of caution as the IMEI identified during the course of the seizure of SUBJECT DEVICE 2 did not match the IMEI identified in a subpoena of the ORTIZ PHONE, which was the IMEI that was included in the search warrant (24-MR-92) for an Apple iPhone 14 PRO 128 Space Black, IMEI: 3534297, assigned phone number (505) 907-8727 used by Nelson ORTIZ (24-MR-92).

b.  The property to be searched is an Apple iPhone, IMEI: 356240877129819, hereinafter "SUBJECT DEVICE 2." The SUBJECT DEVICE 2 is currently located in the Evidence Control Room at FBI Albuquerque, 4200 Luecking Park Avenue NE, Albuquerque, New Mexico, 87107.

c.  The property to be searched is a black Apple iPhone Evidence Item #1 as noted in FD-886 Evidence Collected Log dated January 18, 2024, that recorded the evidence found during the search of Harvey JOHNSON's assigned APD Police Vehicle, Unit #C94, hereinafter "SUBJECT DEVICE 3." The SUBJECT DEVICE 3 is currently located in the Evidence Control Room at FBI Albuquerque, 4200 Luecking Park Avenue NE, Albuquerque, New Mexico, 87107.

d.  The property to be searched is a silver and blue thumb drive Evidence Item #3 as noted in FD-886 Evidence Collected Log dated January 18, 2024, that recorded the evidence found during the search of Harvey JOHNSON's assigned APD Police Vehicle, Unit #C94, hereinafter "SUBJECT DEVICE 4." The SUBJECT DEVICE 4 is currently located in the Evidence Control Room at FBI Albuquerque, 4200 Luecking Park Avenue NE, Albuquerque, New Mexico, 87107.

e.  The property to be searched is a black Apple iPhone Evidence Item #17 as noted in FD-886 Evidence Collected Log dated January 18, 2024, that recorded the evidence found during the search of Honorio ALBA's assigned APD Police Vehicle, Unit #C91 hereinafter "SUBJECT DEVICE 5." The SUBJECT DEVICE

4 is currently located in the Evidence Control Room at FBI Albuquerque, 4200 Luecking Park Avenue NE, Albuquerque, New Mexico, 87107.

2.    I am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3.    I have been a Special Agent with the FBI since August 25, 2023. I have received basic law enforcement training at the FBI Academy in Quantico, Virginia. I am currently assigned to the FBI's Albuquerque Field Office, where I am responsible for conducting and assisting in public corruption investigations, including related white-collar and financial crimes. My training included instruction on investigative tools and criminal law, such as the development and identification of probable cause to support the affidavits in support of applications to intercept wire and electronic communications. I have become familiar with the methodology utilized in criminal conspiracies and activities.

4.    Since becoming an FBI agent, I have (a) conducted, monitored, and reviewed physical surveillance, in investigations involving public corruption matters; (b) executed search warrants at locations where records of criminal activity have been found; (c) reviewed and analyzed numerous recorded conversations and other documentation of criminal activity; (d) debriefed confidential human sources; and (e) conducted other surveillance of individuals engaged in public corruption and white-collar crimes. As a result of my training and experience, I am aware that public corruption and white-collar criminals frequently use wire and electronic communications in furtherance of their criminal activities. I am also aware that such criminals often communicate using vague, guarded, or coded language when discussing their illegal activities in an effort to further prevent detection.

**RELEVANT STATUTES**

5.      This investigation concerns alleged violations of certain activities relating to the following federal crimes (the "TARGET OFFENSES"), or aiding and abetting such crimes:

   a.  18 U.S.C. § 1951 (Hobbs Act extortion under color of official right);

   b.  18 U.S.C. § 1952 (Travel Act interstate travel or transportation in aid of racketeering enterprises);

   c.  18 U.S.C. § 371 (conspiracy);

   d.  18 U.S.C. § 666 (bribery);

   e.  18 U.S.C. § 1343 (wire fraud); and

   f.  18 U.S.C. §§ 1343, 1346 (honest services wire fraud).

6.      There is also probable cause to search the locations, persons, phones, and items described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

**FACTS ESTABLISHING PROBABLE CAUSE**

7.      This affidavit fully incorporates by reference the affidavit submitted in support of the search warrant to search Albuquerque Police Department Police Vehicle Unit #E36, Unit #C91, Unit #D46, Unit #A52, and Unit #C94 (24-MR-97), an Apple iPhone 14 PRO 128 Space Black, IMEI: 3534297, assigned phone number (505) 907-8727 used by Nelson ORTIZ (the **ORTIZ PHONE**) (24-MR-92), and the person of Nelson ORTIZ (24-MR-91).

8.      On January 16, 2024, United States Magistrate Judge Karen B. Molzen approved a federal search warrant to search APD Police Vehicle Unit #A52, which was then-assigned to Nelson ORTIZ, pursuant to the warrant affidavit referenced above. On January 18, 2024, agents executed the warrant of APD Police Vehicle Unit #A52 at 400 Wyoming Boulevard NE, Albuquerque, New Mexico, 87123. During the course of the search, agents located SUBJECT

DEVICE 1 in the front passenger seat phone holder of APD Police Vehicle Unit # A52. SUBJECT DEVICE 1 is currently in the lawful possession of the FBI.

9. On January 16, 2024, United States Magistrate Judge Karen B. Molzen approved federal search warrants to search the person of Nelson Ortiz and to search the **ORTIZ PHONE** pursuant to the warrant affidavit referenced above. On January 18, 2024, agents executed the warrant on the person of Nelson Ortiz at 400 Wyoming Boulevard NE, Albuquerque, New Mexico, 87123. During the course of the search, agents located SUBJECT DEVICE 2 in the front left pocket of Nelson Ortiz. While a search warrant was issued for the **ORTIZ PHONE**, SUBJECT DEVICE 2 has a different IMEI than the **ORTIZ PHONE**, so SUBJECT DEVICE 2 has not been searched to date. SUBJECT DEVICE 2 is currently in the lawful possession of the FBI.

10. On January 16, 2024, United States Magistrate Judge Karen B. Molzen approved a federal search warrant to search APD Police Vehicle Unit #C94, which was then-assigned to Harvey JOHNSON, pursuant to the warrant affidavit referenced above. On January 18, 2024, agents executed the warrant of APD Police Vehicle Unit #C94 at 1930 Camino Cancun, Los Lunas, New Mexico, 87031. During the course of the search, agents located SUBJECT DEVICE 3 and SUBJECT DEVICE 4 in the front driver side door pocket of APD Police Vehicle Unit # C94. SUBJECT DEVICE 3 and SUBJECT DEVICE 4 are currently in the lawful possession of the FBI.

11. On January 17, 2024, United States Magistrate Judge Karen B. Molzen approved a federal search warrant to search APD Police Vehicle Unit #C91, which was then-assigned to Honorio ALBA, pursuant to the warrant affidavit referenced above. On January 18, 2024, agents executed the warrant of APD Police Vehicle Unit #C91 at 68 McCall Loop, Edgewood, New

Mexico, 87015. During the course of the search, agents located SUBJECT DEVICE 5 on the front passenger seat under a bag located inside of APD Police Vehicle Unit #C91. SUBJECT DEVICE 5 is currently in the lawful possession of the FBI.

12.     Additionally, in part, this warrant seeks authorization to search property that is owned, occupied, or used by the Albuquerque Police Department in which there is no expectation of privacy. *See* APD Standard Operating Procedure 3-41-8(A) ("Department-issued property and Department facilities are subject to search at any time."). As detailed further in the affidavit submitted in support of the search warrants described above, the leadership at APD has been fully cooperative in supporting this investigation to help ensure that all APD officers involved in the scheme are identified. The leadership at APD has continued to offer its full support of this investigation, including providing access to any APD property that is the subject of this warrant and consenting to the search of said property. However, to the extent any of the TARGET SUBJECTS attempt to claim that there was an expectation of privacy to this property, I have, in an abundance of caution, sought authorization for the warrants described herein.

13.     While the FBI might already have all necessary authority to examine the SUBJECT DEVICES, I seek this additional warrant out of an abundance of caution to be certain that an examination of the SUBJECT DEVICES will comply with the Fourth Amendment and other applicable laws.

14.     The SUBJECT DEVICES are currently in storage at the Evidence Control Room, FBI Albuquerque, 4200 Luecking Park Avenue NE, Albuquerque, New Mexico, 87107.  In my training and experience, I know that the SUBJECT DEVICES been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

15.     There is probable cause to believe that the electronic devices described in Attachment A will contain records and items pertaining to Thomas CLEAR, Ricardo MENDEZ, Honorio ALBA, Joshua MONTANO, Harvey JOHNSON, Nelson ORTIZ (the TARGET SUBJECTS), and others' criminal scheme in violation of 18 U.S.C. § 1951 (Hobbs Act extortion under color of official right); 18 U.S.C. § 1952 (Travel Act interstate travel or transportation in aid of racketeering enterprises); 18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 666 (bribery); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. §§ 1343, 1346 (honest services wire fraud); and 18 U.S.C. § 2 (aiding and abetting), for the time frame reflected in Attachment B:

a.  Driver's licenses (other than those belonging to the target subjects or other persons present at the time of the search);

b.  Records reflecting how DWI offender payments were tracked;

c.  Records related to payments to Thomas CLEAR, Ricardo MENDEZ, Honorio ALBA, Joshua MONTANO, Nelson ORTIZ, Harvey JOHNSON, or other officers involved in this scheme;

d.  Records and information related to DWI offenders targeted as part of this scheme;

e.  Any and all lists or notes containing information such as names, telephone numbers, or addresses of DWI offenders targeted as part of this scheme;

f.  Telephone and address books or notes containing telephone numbers and addresses of co-conspirators;

g.  Communication devices used by co-conspirators;

h.  Evidence related to the purchase of goods – including vehicles, clothing, jewelry, travel, or other things of value – with ill-gotten gains of criminal activity;

i.  Bulk cash, currency, or other financial instruments above $1,000 in value.

j.  Messages, notes, correspondence, and/or communications between co-conspirators;

k.  Records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks received, passbooks, bank checks, safe deposit box keys, vault keys and other items evidencing the obtaining, secreting, and/or concealment, and/or expenditures of money;

l.  Photographs or videos of Thomas CLEAR, Ricardo MENDEZ, Honorio ALBA, Joshua MONTANO, Nelson ORTIZ, Harvey JOHNSON, their co-conspirators, and the property and assets purchased with proceeds of the criminal scheme;

**TECHNICAL TERMS**

16.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication . through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing

dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Smartphone: A "smartphone" is a type of mobile or cellular telephone, and functions as multi-purpose mobile-computing devices. Smartphones can function as traditional telephones with the additional ability to store contact information, send and receive voice, text, and media messages, store information and media, access the Internet, and perform many of the same functions as a traditional computer. A smartphone user may perform these various functions through software applications ("apps") which may store evidence of such use on the device.

d. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other

digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually

include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

g.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

h.  Pager:  A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network.  Some pagers enable the user to send, as well as receive, text messages.

i.  IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g.,

121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

j. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

k. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

17. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.samsung.com/levant/smartphones/galaxy-s20/specs/ and apple.com/iPhone, I know that the Devices to be searched have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

18. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or

storage functions, including desktop computers, notebook computers, mobile phones, smartphones, tablets, server computers, and network hardware. The term "digital media" includes personal digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones. The term "storage media" includes any physical object upon which electronic data can be recorded, such as hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media or digital medium. Collectively, the terms "computer," "digital media," and "storage media" are referred to as "electronic media."

## ELECTRONIC MEDIA AND FORENSIC ANALYSIS

19.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20.    *Probable cause.* There is probable cause to believe that things that were once stored on the SUBJECT DEVICES may still be stored there, for at least the following reasons:

   a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

21.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on  the SUBJECT DEVICES because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the

search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under

investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

22.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

23.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICES described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Zackari S. Mercado
Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically and signed electronically on January 25, 2024

KAREN B. MOLZEN
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

The property to be searched is a black Apple iPhone, Evidence Item #17 as noted in FD-886 Evidence Collected Log dated January 18, 2024, that recorded the evidence found during the search of Honorio ALBA's assigned APD Police Vehicle, Unit #C91 ("SUBJECT DEVICE 5"). SUBJECT DEVICE 5 is in the possession of the FBI in the FBI's Evidence Control Room at 4200 Luecking Park Avenue NE, Albuquerque, New Mexico, 87107.

This warrant authorizes the forensic examination of this device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

*Property to be seized*

All records relating to violations of 18 U.S.C. § 1951 (Hobbs Act extortion under color of official right); 18 U.S.C. § 1952 (Travel Act interstate travel or transportation in aid of racketeering enterprises); 18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 666 (bribery); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. §§ 1343, 1346 (honest services wire fraud); and 18 U.S.C. § 2 (aiding and abetting), those violations involving a scheme to obtain payments in exchange for an officer refraining from filing charges or from appearing for interviews or court settings, and involving Thomas CLEAR, Ricardo MENDEZ, Joshua MONTANO, Honorio ALBA, Harvey JOHNSON, and/or Nelson ORTIZ, since March 11, 2020, including:

a.      Records related to driver's licenses (other than those belonging to Honorio ALBA);

b.      Records reflecting how payments were tracked for DWI offenders were targeted under this criminal scheme;

c.      Records related to payments to Thomas CLEAR, Ricardo MENDEZ, Joshua MONTANO, Honorio ALBA, Harvey JOHNSON, Nelson ORTIZ, or other officers involved in the criminal scheme;

d.      Records and information related to DWI offenders targeted as part of the criminal scheme;

e.      Any and all lists or notes containing information such as names, telephone numbers, or addresses of DWI offenders targeted as part of the criminal scheme;

f.      Telephone and address books or notes containing telephone numbers and addresses of co-conspirators;

1

g.   Evidence related to the purchase of goods – including vehicles, clothing, jewelry, travel, or other things of value – with criminal proceeds;

h.   Bulk cash, currency, or other financial instruments above $1,000 in value that constitute proceeds of or are intended to facilitate the scheme described above;

i.   Communication devices used by Honorio ALBA and/or co-conspirators, including but not limited to **SUBJECT DEVICE 5**;

j.   Messages, notes, correspondence, and/or communications between co-conspirators;

k.   Records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks received, passbooks, bank checks, safe deposit box keys, vault keys and other items evidencing the obtaining, secreting, and/or concealment, and/or expenditures of money;

l.   Photographs or videos of Honorio ALBA, their co-conspirators, and the property and assets purchased with proceeds of the criminal scheme;

m.   Information that constitutes evidence of the identification or location of the user(s) of the device;

n.   Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

o.   Information that constitutes evidence indicating the state of mind of Thomas CLEAR, Ricardo MENDEZ, Joshua MONTANO, Honorio ALBA, Harvey

2

JOHNSON, or Nelson ORTIZ, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

p.   Information that constitutes evidence concerning how and when the device was accessed or used, and by whom, to determine the geographic and chronological context of device access, use, and events relating to the crime under investigation and to the user of the device;

q.   The content of communications that constitutes evidence of the criminal activity under investigation, including communications by and between Thomas CLEAR, Ricardo MENDEZ, Joshua MONTANO, Honorio ALBA, Harvey JOHNSON, Nelson ORTIZ, and any other coconspirators or accomplices;

r.   Steps taken in furtherance of the criminal activity under investigation;

s.   Evidence indicating in any way a motive to commit any the offenses detailed in this affidavit, or to otherwise engage in criminal activity;

t.   Identification of coconspirators, accomplices, and aiders and abettors in the commission of the above offenses.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the

3

disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

KBM